## MIFFLIN CHEMICAL CO
v.
## PUREPAC CORP.

United States District Court
S. D. New York.
Oct. 21, 1953.

**50**

Henry L. Burkitt, New York City, Caesar & Rivise, Philadelphia, Pa., of counsel, for plaintiff.

Mock & Blum, New York City, for defendant.

CONGER, District Judge.

This is an application by the plaintiff for a preliminary injunction restraining the defendant from using in the distribution and sale of its products the plaintiff's registered trade-mark "Dermium."

It appears from the affidavits of the plaintiff's president that the plaintiff has been engaged in the manufacture, distribution and sale of pharmaceuticals since 1921; that it has spent large sums of money to advertise its products under its trade-marks; that it adopted, in 1946, the trade-mark "Dermium" for rubbing alcohols and emollients and in September and November, 1947, the Patent Office issued Certificates of Registration to plaintiff covering the trade-mark "Dermium" as used on such products; that it has spent over $265,000 in advertising its products bearing the "Dermium" trade-mark and has sold approximately 3,500,000 units totalling approximately $1,750,000.

It further appears from this affidavit that in the early part of 1953 the defendant commenced selling a medication for pimples, acne and blackheads called "Wunder-Skin", the label of which included the legend, "Active ingredients:

Dermium * * *", etc. and that defendant's extensive advertising called attention to the presence of a cleansing antiseptic, "Dermium"; that, in May of this year, plaintiff's attorneys notified defendant of its alleged infringement of plaintiff's trade-mark and demanded that the defendant cease such infringement, surrender labels, circulars, etc. and remove the offending product from customers' shelves; that the defendant has failed to comply with the plaintiff's demands for immediate surrender of labels, etc. and removal of products and has failed to inform plaintiff how quickly it will comply; that the continued infringement of plaintiff's trade-mark as well as the continuation of defendant's product on customers' shelves along with the advertising will irreparably damage plaintiff's reputation and good will built up in the trade-mark "Dermium", will mislead consumers into believing that defendant's product originates with plaintiff so that the plaintiff may be further irreparably damaged in the event defendant's antiseptic is inferior to plaintiff's.

The plaintiff has also offered various exhibits in support of the application.

In opposition, the executive vice president of the defendant avers that the latter has been in existence since 1929, manufacturing, distributing and selling drugs, pharmaceuticals and chemicals and is probably one of the largest packaged drug houses in the United States, with a credit rating of over $1,000,000; that in April, 1953 it put out the preparation "Wunder-skin", which is an old preparation formerly sold under the trade-mark "Wunderskin", now expired, by a company with which the president of defendant was formerly connected; that the defendant's advertising agency suggested the hyphenation of "Wunder-skin" and also selected the word "Dermium" to designate an ingredient at the time defendant decided to reintroduce the product; that "Dermium" was not searched by defendant's counsel because defendant was not using the same as a trade-mark; that its product can in no way be considered as relating to or com-

petitive with plaintiff's product containing the "Dermium" mark, rubbing alcohol; that when the defendant put "Wunder-skin" on the market it never knew that "Dermium" was the registered trade-mark of plaintiff but knew plaintiff marketed a rubbing alcohol under the name of "Mifflin"; that affiant has never observed plaintiff's alleged emollient under the word "Dermium" on sale in drug stores and does not believe that plaintiff markets such a product.

The affiant further relates that upon notification of plaintiff's registration of "Dermium", the defendant decided to replace such word with "Derma-Sep" which it had been using for years on its "Alcorub" product and on June 19, 1953 it instructed the manufacturer of its "Wunder-skin" tubes, and notified its advertising agency, to make the substitution; that it has been unable to remove "Dermium" from the tubes lithographed prior to plaintiff's notice without destroying its great investment therein; it anticipates that by October 31, 1953, it will have disposed of all the tubes so lithographed and will thereafter use tubes with the substituted word.

In addition to the aforementioned affidavit the defendant has offered various exhibits, one of which is a compilation made by defendant's counsel of unexpired registrations of, and pending applications for, trade-marks commencing with the prefix "Derm". There appears to be 103 of the same and, according to an affidavit of defendant's counsel, there are about 50 expired registrations and at least 75 unexpired registrations which include "Derm" as a suffix.

An affidavit of a pharmacist and drug store owner filed in defendant's behalf states, among other things, that the affiant has never heard anyone call for rubbing alcohol as "Dermium", nor has affiant ever heard of an emollient by that name; he has heard many customers call for "Mifflin" alcohol and "Wunder-skin" medicated skin cream.

An affidavit of one Elvira W. Darne, filed in defendant's behalf, states that she has examined the Patent Office files, has found plaintiff's two registrations, for both of which the same label was filed and no other. The label reads as follows:

"Dermium
"Trade Mark
"Mifflin Chemical Co. Philadelphia, Pa."

In reply to the affidavit of defendant's executive vice president, the vice president of the plaintiff states that in August of this year agents of defendant were promoting "Wunder-skin" with "Dermium"; that he knows that defendant changed its label for its rubbing alcohol from "Alcorub" to "Alcorub with Derma-Sep" about six months after the plaintiff placed its "Mifflin" alcohol with "Dermium" on the market, and believes that the defendant had full knowledge of plaintiff's use and ownership of the trade-mark "Dermium" at the time defendant began to market "Wunder-skin" with "Dermium."

The complaint herein states the customary claims for trade-mark infringement and unfair competition and seeks an injunction, an accounting and treble damages.

The answer, in addition to the usual denials, sets up various defenses including that neither defendant nor plaintiff uses "Dermium" as a trade-mark or origin indicator but rather to designate an ingredient of its products; that defendant has always presented and advertised its products as "Wunder-skin"; that plaintiff's registration of "Dermium" is invalid by reason of prior and subsequent use and registration of marks commencing with "Derm"; that "Dermium" as used by plaintiff is descriptive of plaintiff's goods; that upon notice of plaintiff's interest, it immediately took steps to eliminate "Dermium" from its products.

I believe the plaintiff should have the relief it seeks, commencing, however, from November 1, 1953.

Although the defendant has suggested the invalidity of plaintiff's mark, its own non-infringement and lack of unfair competition, its conduct, nevertheless,

spells out a seeming acquiescence in the relief sought. It seeks only to be spared the loss of its investment in tubes and cartons produced and distributed prior to notice of plaintiff's interest. I believe that this is an equitable reprieve and I, therefore, grant it in reliance upon its representations, and affirmations in proof of the bona fides of such representations, that it will have disposed of all offending articles by October 31, 1953.

Along with the order to be settled herein, the parties will submit memoranda in connection with the amount of security to be fixed.